# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| ALANA H., o/b/o K.A.C., a minor,[1] | : | Case No. 3:23-cv-00333 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## DECISION AND ORDER

---

Plaintiff filed an application for child Supplemental Security Income (SSI) on behalf of her minor son (Claimant) on January 6, 2020. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Claimant was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action without the assistance of counsel. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.      BACKGROUND

Plaintiff asserts that Claimant has been under a disability since January 1, 2020. On the SSI application date of January 6, 2020,[2] Claimant was a newborn/young infant. *See* 20 C.F.R. § 416.926a(g)(2)(i). He was an older infant/toddler on the date that the ALJ issued the decision. *See* 20 C.F.R. § 416.926a(a)(2)(ii).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 119-30), Plaintiff's Statement of Errors ("SE," Doc. No. 12), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 14). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     LEGAL FRAMEWORK FOR CHILD SSI DISABILITY
##         DETERMINATIONS

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). An individual under the age of 18 is considered "disabled" for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the SSI application is filed. Thus, the relevant period of consideration in this case begins on January 6, 2020. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.")

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for

determining whether a child is disabled for purposes of SSI benefits:

1. Is the child is engaged in any substantial gainful activity? If so, the child is not disabled.

2. Does the child have a medically severe impairment or combination of impairments? If not, the child is not disabled.

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a), and does the impairment meet the duration requirement? If so, the child is disabled.

20 C.F.R. § 416.924(a)-(d).

When determining whether the child's impairment or combination of impairments

functionally equals any listing(s) in the Listing of Impairments, the ALJ will assess the

child's functioning in the following six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). To functionally equal a listed impairment, the impairment

must result in "marked" limitations in two of the domains of functioning or an "extreme"

limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation means that the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is "'more than moderate' but 'less than extreme.'" *Id.* An "extreme" limitation means that the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

## III.    STANDARD OF REVIEW

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different

4

conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Claimant's application for benefits. In doing so, the ALJ considered the sequential steps set forth in the Social

5

Security regulations for child SSI disability determinations. *See* 20 C.F.R. § 416.924.

The ALJ made the following findings of fact:

Finding 1:    Claimant was a newborn/young infant on the SSI application date, and he was an older infant/toddler on the date that the ALJ issued the decision.[3]

Finding 2:    He has not engaged in substantial gainful activity since the SSI application date.

Finding 3:    He has the severe impairment of low birth weight.

He has the following nonsevere impairments: plagiocephaly, metatarsus adductus of both feet, umbilical hernia, and gastric reflux.

Finding 4:    He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Finding 5:    Claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings.

In determining that Claimant's impairments are not functionally equivalent to a listed impairment, the ALJ found that he has:

- <u>no</u> limitation in acquiring and using information;
- <u>no</u> limitation in attending and completing tasks;
- <u>no</u> limitation in interacting and relating with others;
- <u>less than a marked</u> limitation in moving about and manipulating objects;
- <u>no</u> limitation in the ability to care for himself/herself; and
- <u>less than a marked</u> limitation in health and physical well-being.

---

[3] The ALJ stated in Finding 1: "[H]e was a newborn/young infant on January 6, 2020, the date application was filed, and is currently a newborn/young infant (20 CFR 416.926a(g)(2))." (Decision, Doc. No. 7-2 at PageID 123.) However, at the time the ALJ issued the decision, Claimant had attained the age of one year and five months. He was therefore an older infant/toddler under 20 C.F.R. § 416.926a(g)(2)(ii). Nevertheless, the ALJ stated later in the decision that Claimant had attained the age of one year and five months, and he evaluated the appropriate listings for both age categories. (Decision, Doc. No. 7-2 at PageID 124.) Therefore, the ALJ's statement at Finding 1 is a harmless error.

(Decision, Doc. No. 7-2 at PageID 123-27.) These findings led the ALJ to conclude that Claimant does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 127.)

### B.    The ALJ's Symptom Severity Analysis

After describing the applicable legal standard, the ALJ summarized Plaintiff's reports of Claimant's symptoms and subjective complaints, as well as Plaintiff's testimony that she provided during the June 2021 hearing. (Decision, Doc. No. at PageID 125.) The ALJ summarized the medical records and acknowledged the subjective complaints and developmental difficulties that Plaintiff reported to Claimant's medical providers. (*Id.* at PageID 123-27.) The ALJ also described the medical opinions. (*Id.* at PageID 126.) The ALJ concluded that although Claimant's impairments could reasonably be expected to cause the alleged symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at PageID 125.)

The ALJ concluded that Claimant has less than a marked limitation in the functional domains of (1) moving about and manipulating objects and (2) health and physical well-being, and has no limitation in the other four domains of functioning. (Decision, Doc. No. 125-27.) The ALJ noted that Claimant was born prematurely at a gestational age of thirty-two weeks and weighed 1590 grams. (*Id.* at PageID 126.) Claimant was hospitalized for approximately three weeks and weighed 2019 grams upon discharge. (*Id.*) Approximately six months later, Claimant weighed thirteen pounds and one ounce. (*Id.*) The ALJ reasoned that although Plaintiff testified Claimant remains

7

"somewhat small for his age" at age two, Claimant was starting to stand and walk on his own, did not have any trouble eating, and was able to eat solid foods without difficulty. (*Id.*) The ALJ concluded that although Claimant had been diagnosed with plagiocephaly and metatarsus adductus of both feet, the medical records did not document any significant limitations associated with these impairments. (*Id.*) He also observed that Claimant's pediatrician noted in March 2020 that Claimant was "meeting developmental milestones," was making moderate improvement, and exhibited age-appropriate tone, strength, and range of motion of the extremities.[4] (*Id.*) The ALJ further explained that the record showed no mental health treatment or psychometric testing that documented any cognitive impairment. (*Id.* at PageID 126-27.)

### C.   State Agency Medical Consultants

State agency reviewing pediatrician Obiaghanwa Ugbana, M.D. completed a Disability Determination Explanation form in April 2020. (AR, Doc. No. 7-3 at PageID 153-56.) After summarizing the medical evidence, Dr. Ugbana found that Claimant had the severe impairment of low birth weight. (*Id.* at PageID 153.) Dr. Ugbana concluded that Claimant's impairments did not meet or medically equal any listed impairment. (*Id.*) Dr. Ugbana also concluded that Claimant's impairments did not functionally equal any of the listings. (*Id.*) In the Childhood Disability Evaluation section of the form, Dr. Ugbana indicated that Claimant experienced less than marked limitation in the domain of health

---

[4] The ALJ stated that Claimant's pediatrician made this note in March 201**9**. (Decision, Doc. No. 7-2 at PageID 126 (citing AR, Doc. No. 7-7 at PageID 464).). This appears to be a typographical error, as the progress note that the ALJ cited is dated March 13, 202**0**. (AR, Doc. No. 7-7 at PageID 461-64.)

and physical well-being. (*Id.* at PageID 154.) Dr. Ugbana indicated that Claimant had no limitation in the other five functional domains. (*Id.*) Finally, Dr. Ugbana concluded that Claimant's reported symptoms were only partially consistent with the medical evidence. (*Id.* at PageID 155.) Dr. Ugbana acknowledged that Claimant was born premature with a lower-than-normal birth weight and with pulse oximeter readings "in the 90s." (*Id.*) However, she explained that upon discharge, Claimant's breath sounds were clear, and he was "tolerating feedings well and taking good volumes." (*Id.*)

Louis Goorey, M.D. reviewed the updated record and completed a Disability Determination Explanation form at the reconsideration level in September 2020. (AR, Doc. No. 7-3 at PageID 158-61.) After summarizing the evidence, Dr. Goorey concurred with Dr. Ugbana's conclusions about Claimant's severe impairment and that Claimant's impairments did not meet, medically equal, or functionally equal any of the listings. (*Id.* at PageID 159.) With one exception, Dr. Goorey also concurred with and adopted the levels of impairment in the six functional domains identified by Dr. Ugbana. Specifically, Dr. Goorey found less than marked impairment (versus no impairment) in the domain of moving about and manipulating objects. (*Id.* at PageID 160.)

The ALJ concluded that Dr. Ugbana's opinions were "generally persuasive." (Decision, Doc. No. 7-2 at PageID 126.) However, the ALJ found that Dr. Goorey's opinions were "more consistent with the evidence of record," and concluded that Dr. Goorey's opinions were "more persuasive" than Dr. Ugbana's. (*Id.*) Explaining that he had considered the "medical specialties, Social Security disability programs expertise and extensive experience evaluating Social Security disability cases," the ALJ adopted Dr.

9

Goorey's findings upon reconsideration. (*Id.*) The ALJ concluded that the findings were "consistent with the evidence as a whole and . . . the medical records in evidence support the degree of limitation endorsed." (*Id.*)

## V.    LAW AND ANALYSIS

In her Statement of Errors, Plaintiff challenges the ALJ's finding that the impairments of plagiocephaly, metatarsus adductus of both feet, gastric reflux, and umbilcal hernia are nonsevere. (SE, Doc. No. 12 at PageID 537.) Plaintiff also disputes the ALJ's conclusion that Claimant's impairments do not meet or medically equal a listed impairment. (*Id.* at PageID 538.) Finally, Plaintiff challenges the ALJ's finding that Claimant's impairments do not functionally equal the severity of any of the listings. (*Id.* at PageID 538-39.) Plaintiff also submitted additional medical records that were not part of the record at the hearing level. (Exhibit 1, Doc. No. 12-2.)

The Court has carefully reviewed the ALJ's decision to determine whether the ALJ's findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings. For the reasons discussed below, the Court concludes that the ALJ provided reasonable explanations for why and how he weighed the medical and other evidence, and that his conclusions are supported by substantial evidence. Therefore, the Court shall affirm the Commissioner's decision.

A.    **The ALJ Properly Evaluated The Severity Of Claimant's Impairments.**

1.    **Applicable law**

An ALJ evaluates the severity of a claimant's impairments at Step Two of the three-step sequential evaluation for determining child SSI benefits. 20 C.F.R. § 416.924(c). An impairment or combination of impairments is "severe" if it causes "more than minimal functional limitations." *Id.* Conversely, an impairment or combination of impairments is not severe if the "impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.*

2.    **Analysis**

Plaintiff contends that the ALJ should have found plagiocephaly, metatarsus adductus of both feet, umbilical hernia, and gastric reflux to be severe impairments. (SE, Doc. No. 12 at PageID 537.) The Court concludes that this assertion is not well-taken because the ALJ's findings at Step 2 are supported by substantial evidence.

The ALJ acknowledged many of Plaintiff's subjective complaints related to Claimant's conditions of a flattened head, deformity of the feet, gastric reflux, and umbilical hernia. (Decision, Doc. No. 7-2 at PageID 123-26.) The ALJ also summarized the medical records that documented Claimant's treatment for these conditions. (*Id.* at PageID 123-27.) For example, the ALJ acknowledged that Claimant participated in physical therapy for plagiocephaly, but noted that the condition was "classified as mild and improving." (Decision, Doc. No. 7-2 at PageID 123 (citing AR, Doc. No. 7-7 at

11

PageID 450, 452, 459).) The ALJ explained that by July 2020, just seven months after

Claimant's birth, Claimant's physical therapist observed that Claimant "demonstrate[d]

full cervical rotation to the right and [was] actively tracking to the right and to the left."

(*Id.* (citing AR, Doc. No. 7-7 at PageID 440).) The ALJ also cited Plaintiff's statement to

the physical therapist that she had observed "significant improvement" of Claimant's

head shape in the past few weeks. (*Id.*)

Next, the ALJ acknowledged Claimant's diagnosis of metatarsus adductus of both

feet, but cited a pediatrician's note that the condition would "likely self[-]resolve as

[Claimant] begins to bear weight." (Decision, Doc. No. 7-2 at PageID 123 (citing AR,

Doc. No. 7-7 at PageID 452).) The ALJ also cited a March 2020 physical therapy

progress note that documented age-appropriate range of motion, strength, and tone of

Claimant's lower extremities. (*Id.* (citing AR, Doc. No. 7-7 at PageID 460).)

Finally, the ALJ acknowledged diagnoses of gastric reflux and an umbilical

hernia, but noted Plaintiff's testimony that Claimant's symptoms resolved once she

started feeding Claimant a new formula. (Decision, Doc. No. 7-2 at PageID 123 (citing

AR, Doc. No. 7-7 at PageID 460).) The ALJ reasoned that because these conditions do

not cause more than minimal functional limitations, they are nonsevere. (*Id.*)

Taken together, the evidence cited by the ALJ constitutes substantial evidence—

that is, "relevant evidence as a reasonable mind might accept as adequate to support a

conclusion" (*Biestek*, 139 S. Ct. at 1154)—that supports the ALJ's finding that

plagiocephaly, metatarsus adductus of both feet, umbilical hernia, and gastric reflux were

nonsevere. Because the ALJ's finding is supported by substantial evidence, it cannot be

12

disturbed by this Court even if there were substantial evidence in the record that would support the opposite conclusion. *Key*, 109 F.3d at 273.

**B.    The ALJ Properly Concluded That Claimant Does Not Have An Impairment Or Combination Of Impairments That Meets Or Medically Equals The Severity Of A Listed Impairment.**

**1.    Applicable law**

A claimant will be found "disabled" at Step Three of the childhood sequential evaluation if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 416.925(c)(3); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citation omitted). A claimant must satisfy all of the criteria to "meet" the listing. *Id.* A claimant is also disabled if his impairment "equals" the listing—that is, if the impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 416.920(a)(4)(iii), 416.926(a); *Reynolds*, 424 F. App'x at 414 (citation omitted). The ALJ "should compare a claimant's impairments 'with those for closely analogous listed impairments.'" *Dickerson v. Comm'r of Soc. Sec.*, No. 23-5718, 2024 U.S. App. LEXIS 6312, at *19-20 (6th Cir. Mar. 15, 2024) (citing 20 C.F.R. § 416.926(b)(2)). Additionally, "the ALJ 'must consider the combined effect of all medically determinable impairments, even those that are not severe.'" *Id.* (citation omitted).

The ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical

13

findings for any Listed Impairment." *Reynolds*, 424 F. App'x at 415. The Sixth Circuit has emphasized that the ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Id*. at 416. Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id*.

Listing 100.04 addresses low birth weight in infants from birth to attainment of age one. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 100.04. Listing 100.04 requires either A or B:

A.      Birth weight of less than 1200 grams.[5]

OR

B.      The following gestational age and birth weight:

| Gestational Age (in weeks) | Birth Weight |
|---|---|
| 37-40 | 2000 grams or less |
| 36 | 1875 grams or less |
| 35 | 1700 grams or less |
| 34 | 1500 grams or less |
| 33 | 1325 grams or less |
| 32 | 1250 grams or less |

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 100.04

Listing 100.05 addresses failure to thrive in children from birth to attainment of age 3. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 100.05. Listing 100.05 requires either A and B, or A and C:

---

[5] "Birth weight" means the first weight recorded after birth. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 100.00(B).

A.      Growth failure as required in 1 or 2:

      1. *For children from birth to attainment of age 2,* three weight-for-length measurements that are:
         a.  Within a consecutive 12-month period; and
         b.  At least 60 days apart; and
         c.  Less than the third percentile on the appropriate weight-for-length table under 105.08B1; or

      2. *For children age 2 to attainment of age 3,* three BMI-for-age measurements that are:
         a.  Within a consecutive 12-month period; and
         b.  At least 60 days apart; and
         c.  Less than the third percentile on the appropriate BMI-for-age table under 105.08B2.

AND

B.      Developmental delay (see 100.00C1 and C3), established by an acceptable medical source and documented by findings from one current report of a standardized developmental assessment (see 100.00C3b) that:

      1. Shows development not more than two-thirds of the level typically expected for the child's age; or

      2. Results in a valid score that is at least two standard deviations below the mean.

OR

C.      Developmental delay (see 100.00C3), established by an acceptable medical source and documented by findings from two narrative developmental reports (see 100.00C3b) that:

      1. Are dated at least 120 days apart (see 100.00C1); and

      2. Indicate current development not more than two-thirds of the level typically expected for the child's age.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 100.05.

15

### 2.    Analysis

The ALJ found that Claimant's impairments do not meet or medically equal the criteria of Listings 100.04 and 100.05. (Decision, Doc. No. 7-2 at PageID 123-24.) The ALJ explained that Listing 100.04 was not met because Claimant's birth weight was 1590 grams at gestational week thirty-two. The ALJ further explained that Claimant's medical records did not show the measurements required to meet Listing 100.05. (*Id.*) Finally, the ALJ found that the evidence did not support a finding that Claimant's impairments, either individually or in combination, equal in severity the criteria of a listed impairment. (*Id.*) This Court concludes that the ALJ's findings are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154. The Court is not permitted to weigh the evidence to determine whether it might support a different result. *Id*.

Plaintiff argues that the ALJ failed to properly consider Claimant's developmental delays. This assertion is not well-taken. The ALJ considered developmental delays when he evaluated Listing 100.05, which describes the evidence required to establish a listing-level developmental delay. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 100.05(B)-(C). Moreover, the ALJ discussed Plaintiff's complaints of mental issues and developmental delays in his analysis of the six domains used for determining functional equivalence. (Decision, Doc. No. 7-2 at PageID 126-27.) The ALJ reasoned that the record showed no mental health treatment or testing that documented a cognitive impairment. (*Id.* at PageID 126-27.) The ALJ also cited a progress note that indicated Claimant was meeting developmental milestones. (*Id.* at PageID 126 (citing AR, Doc. No. 7-7 at PageID 464).)

16

To support her argument that Claimant met a listing for developmental delays, Plaintiff states that a provider diagnosed Claimant as being "at risk for developmental delay" in October 2020 and diagnosed "global developmental delay" in February 2021. (SE, Doc. No. 12 at PageID 538.) But these diagnoses, on their own, do not meet the requirements for developmental delay as set forth in Listing 100.05(B) and (C).

Plaintiff also contends that the ALJ should have evaluated a listing that addressed Claimant's ability to speak at Step 3. (SE, Doc. No. 12 at PageID 538.) This contention is not well-taken. The regulations "do not require the ALJ to address every listing," because "[t]here are a hundred or so listings." *Sheeks v. Comm'r of SSA*, 544 F. App'x. 639, 641 (6th Cir. 2013). The ALJ should discuss a listing "if . . . the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Id.* (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990). Significantly, "[a] claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sheeks*, 544 F. App'x. at 641-42). Instead, the claimant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

Plaintiff cites no medical evidence in support of her assertion that Claimant's ability to speak is impaired. (SE, Doc. No. 12 at PageID 538.) Instead, she relies on her testimony at the June 2021 hearing about Claimant's speech difficulties. *Id*. However, the

17

ALJ explained in the decision that the record did not document any significant cognitive or developmental delays. (Decision, Doc. No. 7-2 at PageID 126-27.) Similarly, the medical evidence in the record does not document any significant speech or hearing problems. (*See, e.g.*, AR, Doc. No 7-7 at PageID 445, 452, 463.) The Court therefore finds that the ALJ did not err by failing to evaluate a speech-related listing.

### C.  The ALJ Properly Concluded That Claimant's Impairments Do Not Functionally Equal The Severity Of Any Of The Listings.

Plaintiff does not challenge the ALJ's conclusions in any specific domain. (SE, Doc. No. 12 at PageID 538-39.) Instead, she describes Claimant's difficulties with areas such as interacting with others and regulating his emotions, and states that these issues "have impacted his overall well-being, academic performance, and long-term social development." (*Id.* at PageID 538.) According to Plaintiff: "Despite early interventions and support [Claimant] did not and has not 'caught up' to his peers." (*Id.* at PageID 539.) However, because the ALJ's contrary conclusions are supported by substantial evidence, the Commissioner's decision must be affirmed.

The ALJ acknowledged many of Plaintiff's subjective complaints related to Claimant's physical and mental conditions, such as a low birth weight, flattened head, deformity of the feet, gastric reflux, umbilical hernia, and developmental delays. (Decision, Doc. No. 7-2 at PageID 123-26.) The ALJ also summarized the medical records that documented Claimant's treatment for these conditions. (*Id.* at PageID 123-27.) As discussed above, the ALJ reasoned that Claimant's plagiocephaly improved with physical therapy. (Decision, Doc. No. 7-2 at PageID 123 (citing AR, Doc. No. 7-7 at

PageID 440, 450, 452, 459).) As for metatarsus adductus of both feet, the ALJ cited a pediatrician's note that the condition would "likely self[-]resolve as [Claimant] begins to bear weight." (*Id.* (citing AR, Doc. No. 7-7 at PageID 452).) The ALJ also cited a March 2020 physical therapy progress note that documented ago-appropriate range of motion, strength, and tone of the lower extremities. (*Id.* (citing AR, Doc. No. 7-7 at PageID 460).) Further, the ALJ acknowledged diagnoses of gastric reflux and an umbilical hernia, but he noted that Plaintiff testified that symptoms of both conditions resolved once she started feeding Claimant a new formula. (*Id.*) Reasoning that none of these conditions caused more than minimal functional limitations, the ALJ concluded that they were nonsevere. (*Id.*) For the reasons discussed above, the ALJ's finding about the severity of Claimant's impairments is supported by substantial evidence.

In his analysis of functional equivalence and the six domains of functioning, the ALJ again summarized Claimant's conditions and treatment. (Decision, Doc. No. 7-2 at PageID 125-27.) The ALJ acknowledged that Claimant was born prematurely and weighed 1590 grams. (*Id.* (citing AR, Doc. No. 7-7 at PageID 308, 361).) The ALJ explained that Claimant was hospitalized for just over three weeks and weighed 2019 grams when he was discharged. (*Id.* (citing AR, Doc. No. 7-7 at PageID 308, 409).) The ALJ cited subsequent progress notes that showed Claimant's weight continued to increase: namely, Claimant weighed eleven pounds and five ounces in May 2020, and he weighed thirteen pounds and one ounce in June 2020. (*Id.* (citing AR, Doc. No. 7-7 at PageID 442, 446, 451).) The ALJ further cited Plaintiff's testimony that although Claimant remained "somewhat small" for his age, Claimant did not have any trouble

19

eating, was able to eat solid foods with no difficulty, and was able to stand and walk on his own. (*Id.*)

The ALJ again addressed plagiocephaly and metatarsus adductus of the feet, and restated his prior conclusion that the conditions did not cause any significant functional limitations. (Decision, Doc. No. 7-2 at PageID 126.) The ALJ cited treatment notes that showed moderate improvement and that Claimant exhibited age-appropriate range of motion, strength, and tone of the extremities. (*Id.*) The ALJ further noted that Claimant's pediatrician remarked in March 2020 that Claimant was "[m]eeting developmental milestones." (*Id.* (citing AR, Doc. No. 7-7 at PageID 464).) The ALJ accounted for this evidence by finding less than marked impairment in the domains of moving about and manipulating objects and health and physical well-being. (*Id.*)

As for the four other domains of functioning, the ALJ acknowledged Plaintiff's allegations of Claimant's mental issues. (Decision, Doc. No. 7-2 at PageID 125-27.) The ALJ explained that the record showed no mental health treatment or psychometric testing that documented a cognitive impairment. (*Id.* at PageID 126-27.) The ALJ also reiterated a pediatrician's observation that Claimant was meeting developmental milestones. (*Id.* at PageID 127) The ALJ concluded that the balance of the evidence did not support Plaintiff's allegations of a mental impairment. (*Id.*)

Plaintiff cites progress notes from February 2021 and December 2022 to support her assertion that Claimant is more limited than the ALJ's findings. (SE, Doc. No. 12 at PageID 538-39.) However, these records were not in front of the ALJ when he issued his decision. As a matter of law, this Court "cannot consider [the] new evidence in deciding

20

whether to uphold, modify, or reverse the ALJ's decision." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). Additionally, for the reasons discussed below, the records are not "material" under the standard for determining whether a Sentence Six remand is warranted.

In sum, the ALJ's explanation shows that he relied on substantial evidence to support his conclusions when he evaluated the medical evidence, the subjective complaints, and the medical opinion evidence to conclude that Claimant's impairments did not meet, medically equal, or functionally equal any of the listings. Because the ALJ's conclusions are within the permissible "zone of choice" and his findings are supported by substantial evidence, they must be affirmed. *Mullen,* 800 F.2d at 545.

### 1. The ALJ properly analyzed the medical opinion evidence when he concluded that Claimant's impairments do not functionally equal the severity of any of the listings.

ALJs are required to analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 416.920c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 416.913(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 416.920b(c)(3).

Because Plaintiff filed her claim on behalf of Claimant after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including

21

controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 416.920c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.*

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from ***other*** providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024

U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[6] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 416.920c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13,

---

[6] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 416.920c(b)(2).

2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

Applying this legal framework to this case, the Court concludes that the ALJ complied with applicable regulations when he concluded that the opinions of the state agency medical consultant at the initial level were "generally persuasive" and that the opinions of the consultant upon reconsideration were "more persuasive." (Decision, Doc. No. 7-2 at PageID 126.) The ALJ addressed both supportability and consistency when he explained that the consultants' findings upon reconsideration were more consistent with the evidence of record than the findings of the initial reviewer, and when he found that the consultants' findings upon reconsideration were consistent with the "evidence as a whole" and the medical records. (*Id.*) The ALJ also explained that he considered the consultants' "medical specialties, Social Security disability programs expertise and extensive experience evaluating Social Security disability cases," which is an appropriate factor to consider under 20 C.F.R. § 416.920c(c)(4)-(5). Therefore, the ALJ's analysis of the supportability and consistency factors complied with the applicable regulations.

### 3. The ALJ properly analyzed Claimant's symptom severity when he concluded that Claimant's impairments do not functionally equal the severity of any of the listings.

The ALJ's evaluation of Claimant's symptoms was governed by a detailed Social Security regulation (20 C.F.R. § 416.929) and Social Security Ruling (SSR) 16-3p, which mandates a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017). Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. Among other things, the ALJ must decide whether the alleged symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently

26

and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. Further, when determining whether an individual's statements are consistent with his symptoms, the ALJ will keep in mind that the individual's statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

27

SSR 16-3p at *7-8. The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

Here, the ALJ complied with the requirements of 20 C.F.R. § 416.929 and SSR 16-3p. The ALJ determined that Claimant has medically determinable impairments (low birth weight, plagiocephaly, metatarsus adductus of both feet, gastric reflux, and umbilical hernia) that could reasonably cause some of the alleged symptoms. (Decision, Doc. No. 7-2 at PageID 123, 125.) The ALJ then considered the evidence in the record and found that the statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence of record. (*Id.* at PageID 125.) For the reasons discussed above, the Court concludes that the ALJ's findings about Claimant's symptom severity are supported by substantial evidence.

### D. Plaintiff's New Evidence Does Not Warrant A Remand.

As noted above, Plaintiff submitted evidence to the Appeals Council that was not in the record at the time the ALJ issued his decision. (AR, Doc. No. 7-2 at PageID 29-118.) This evidence consists of Claimant's medical records from the time period from January 2020 to July 2023, as well as records from a real estate management company that are dated between December 2020 and April 2023. (*Id.*)

Plaintiff also submitted additional evidence with her Statement of Errors. (Exhibit 1, Doc. No. 12-2 at PageID 541-78.) This evidence consists of a February 2021 pediatric record (*id.* at PageID 541-56), a July 2020 letter from Plaintiff's health insurer that described the Supplemental Security Income program (*id.* at PageID 557-58), and printouts about childhood development from the Center for Disease Control's website. (*Id.* at PageID 559-78.) The Court must consider whether it should remand the case to the ALJ for consideration of the evidence submitted after the ALJ's decision.

### 1. Applicable law

Pursuant to Sentence Six of 42 U.S.C. § 405(g), the Court has the authority to "remand the case for further administrative proceedings in light of the new evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). Evidence is "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* Finally, to show "good cause," a claimant must present "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* Plaintiff bears the burden of demonstrating that a Sentence Six remand is appropriate. *Id.; see also Allen v. Comm'r of Soc. Sec.*561 F.3d 646, 653 (6th Cir. 2009).

29

2.      **Analysis**

Only records dated after the ALJ's decision were "not in existence or available" to Plaintiff at the time of the hearing and therefore satisfy the "new" requirement. *Foster*, 279 F.3d at 357. Some of the medical records dated prior to the ALJ's decision do not satisfy the new requirement because the ALJ considered them. Specifically, the ALJ considered the January 21, 2020 pediatric visit (AR, Doc. No. 7-2 at PageID 61-68), March 30, 2020 abdominal x-rays (*id.* at PageID 73-74, 79-80), March 31, 2020 cerebral ultrasound (*id.* at PageID 77-78, 81-84), and June 3, 2020 cerebral ultrasound (*id.* AR, Doc. No. 7-2 at PageID 101-02) when he reviewed the record at the hearing level. (*See* AR, Doc. No. 7-2 at PageID 312-17, 498-507.) The remaining medical records dated prior to the ALJ's decision do not satisfy the new requirement because Plaintiff did not show that they were unavailable to her during the administrative proceedings.

With regard to the good cause requirement, Plaintiff did not present a "reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster,* 279 F.3d at 357. And "[e]ven assuming that [Plaintiff's] *pro se* status is relevant to the 'good cause' inquiry," *see Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 485 (6th Cir. 2006) (citing *Jones v. Sullivan*, 949 F.2d 57, 61 (2d Cir. 1991)), it is unnecessary to consider this issue further because the Court concludes that none of the submitted evidence is "material."

Evidence is material if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster,* 279 F.3d at 357. None of the submitted evidence is material to

30

Claimant's application for disability. The real estate management company records (AR, Doc. No. 7-2 at PageID 49-60) relate to Plaintiff's housing lease, not Claimant's application. Although the letter describing the Supplemental Security Income program and printouts about childhood development generally relate to Claimant's application, it is not reasonably probable that the ALJ would have reached a different decision if he had considered them.

In addition, the newly submitted medical records do not satisfy the materiality requirement. Although blood test results in February 2020 show some values outside of the normal ranges (AR, Doc. No. 7-2 at PageID 75-76), notes from a pediatric follow-up visit in March 2020—which the ALJ reviewed—do not show that Claimant's pediatrician was concerned about the results. (AR, Doc. No. 7-7 at PageID 462-63.) Moreover, a February 2, 2021 blood test report shows values within normal ranges. (AR, Doc. No. 7-2 at PageID 103-04, 109-10.) X-rays of the right fingers taken on March 23, 2021 show no fractures or other abnormalities. (AR, Doc. No. 7-2 at PageID 97-100.)

With regard to Claimant's developmental delays, a February 2, 2021 progress note from Dayton Children's Pediatrics references a "high score" on the Ages and Stages: Social Emotional Questionnaire. (Exhibit 1, Doc. No. 12-1 at PageID 541-42, 551.) Although Sara Guerrero-Duby, M.D. noted "Developmental Screen: Fail," she only generally diagnosed "[d]elayed social and emotional development" and did not make a more specific diagnosis. (*Id.* at PageID 541-42, 551-53.) Further, she only recommended that Plaintiff work with a local Help Me Grow program and have Claimant reassessed at age fifteen months. (*Id.* at PageID 551.) Dr. Guerrero-Duby's other findings were normal,

including normal nutrition, age-appropriate Developmental Surveillance Activity, and normal physical examination findings. (*Id.* at PageID 542, 551-52.) Dr. Guerrero-Duby stated that Plaintiff appeared "well nourished" and noted no concerns about Claimant's weight. (*Id.* at PageID 552.) And although Plaintiff expressed concern that Claimant's head was "still . . . flattened in the back," Dr. Guerrero-Duby stated that Claimant's head was "fine." (*Id.* at PageID 541, 551.)

The Court concludes that the evidence described above does not establish a "reasonable probability" that the ALJ would have reached a different conclusion if presented with it at the time of the decision. *Foster*, 279 F.3d at 357. Accordingly, this evidence is not material and a Sentence Six remand is not warranted.

The Court notes that Plaintiff also submitted medical records dated between May 2022 and December 2023. (AR, Doc. No. 7-2 at PageID 33-38, 69-72, 85-96, 105-08, 113-18.) Among them is a December 22, 2022 Developmental Pediatrics Note indicating that Claimant was diagnosed with suspected autism disorder on October 7, 2022, and noting that subsequent testing supported diagnoses of autism spectrum disorder and global developmental delay. (*Id.* at PageID 33-38.) As a matter of law, these records are not material because they relate to Claimant's condition in 2022 and 2023, and do not relate back to Claimant's condition at the time of the ALJ's 2021 decision. *See Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (new medical evidence compiled in March 1985 was not material to Secretary's decision that plaintiff could perform light or sedentary work as of December 5, 1983); *Wyatt v. Sec. of Health & Hum. Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration

32

or change in condition after the administrative hearing is deemed immaterial."); *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 712 (6th Cir. 1988) ("If in fact the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment.").

For the above reasons, the Court concludes that Plaintiff's newly submitted evidence that predated the ALJ's decision is not material and a Sentence Six remand is not warranted. The Court makes no finding regarding Plaintiff's newly submitted evidence from 2022 and 2023 because, for the reasons explained above, the Court cannot consider such evidence when reviewing the ALJ's June 18, 2021 decision.

## VI.    CONCLUSION

The Court concludes that the ALJ properly applied the governing legal framework and that substantial evidence supports his conclusions. The ALJ provided reasonable explanations, supported by substantial evidence, for how he weighed the evidence, and his findings regarding the three-step sequential analysis for determining child SSI benefits are supported by substantial evidence. The evidence newly submitted by Plaintiff that predates the ALJ's decision is not material and therefore a Sentence Six remand is not appropriate. Accordingly, the Commissioner's decision must be affirmed.

33

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 12) is OVERRULED;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.


                                          *s/ Caroline H. Gentry*
                                          Caroline H. Gentry
                                          United States Magistrate Judge